UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JESSIE WAYNE RIGNEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:25-CV-208-HAI |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| FRANK BISIGNANO, | ) | **ORDER** |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Claimant Jessie Wayne Rigney seeks review of the Social Security Administration's (the "SSA") denial of his request for disability benefits beginning on May 8, 2021.  D.E. 7 at 119.[1]  Rigney initially filed a Title II application for disability and disability insurance on January 16, 2022.  D.E. 13 at 1.  Administrative Law Judge ("ALJ") Brian A. Oaks denied his application on May 24, 2023.  *Id.*; *see also* D.E. 7 at 127.  Rigney then filed a request for review with the Appeals Council (the "Council"), which remanded the case to the ALJ on April 1, 2024, with instructions to obtain additional vocational evidence with regards to Rigney's limitations.  D.E. 13 at 1.  On October 23, 2024, after conducting a second hearing with a Vocational Expert ("VE"), the ALJ again denied Rigney's application.  D.E. 7 at 116-127.  After the Appeals Council denied Rigney's second appeal, Rigney sought judicial review.  D.E. 1.  The Commissioner filed an answer on January 20, 2026.  D.E. 7.  Rigney filed his opening brief on March 11, 2026.  D.E. 10.  The Commissioner filed a responsive brief on May 12, 2026.  D.E. 13.  Rigney did not reply.  Thus, the matter is ripe for adjudication.

---

[1] Pinpoint citations herein are to the blue page numbers generated by CM/ECF.

The Court has jurisdiction to hear Rigney's challenge under 42 U.S.C. § 405(g).  Both parties consented to the referral of this matter to a magistrate judge.  D.E. 15; D.E. 16. Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's request to remand these proceedings.

## I.    The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.  The ALJ followed these procedures in this case.  *See* D.E. 7 at 116-27.

At the first step, the ALJ must determine whether the claimant is currently engaged in a substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  Here, the ALJ found that Rigney had not engaged in a substantial gainful activity since May 8, 2021, the alleged onset date of Rigney's disability.  D.E. 7 at 119.

At the second step, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment that meets the [Social Security Act's} duration requirement . . . or a combinations of impairments that is severe and meets the duration requirement."  20 C.F.R. § 404.1520(a)(4)(ii).  The ALJ found that Rigney had the following severe impairments: cervical spinal degenerative changes status post fusion, degenerative changes of the lumbar and thoracic spine, and bilateral carpal tunnel syndrome.  D.E. 7 at 119.

At the third step, the ALJ must determine whether the claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, the claimant is found to be disabled.  20 C.F.R. § 404.1520(d).  Here, the ALJ found Rigney to have no such impairment.  D.E. 7 at 121.

When the claimant is not found disabled at the third step, the ALJ proceeds to the fourth step. At the fourth step, the ALJ must determine the claimant's past relevant work history and Residual Functional Capacity ("RFC"), which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined that Rigney had the "residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he can frequently reach overhead, handle, and finger with the bilateral extremities." D.E. 7 at 122. The ALJ further determined that Rigney was unable to perform his past relevant work as a lawn service laborer or roof bolter. *Id.* at 126.

Thus, the ALJ proceeded to step five of the analysis. At step five, the ALJ must determine if a claimant can adjust to other work given the claimant's RFC, age, education, and experience. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ must determine whether such jobs exist in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(1). The claimant is not disabled if the SSA establishes such jobs exist. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999). Here, the ALJ found that Rigney could work as an order clerk, a receptionist, or as an office cashier. D.E. 7 at 127. As such, he was found to not be disabled.

## II.    Standards of Review

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial

evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

Federal courts may remand the Commissioner's decision on the basis that the ALJ failed to follow a procedural rule, as "it is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545, (6th Cir. 2004). "'[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Generally, administrative procedural mistakes are reviewed for harmless error. *Rabbers*, 582 F.3d at 654.

### III.    Analysis

Rigney contests the ALJ's evaluation of Rigney's ability to handle, finger, reach, and feel with bilateral upper extremities, and the ALJ's determination that Rigney lacked a serious severe mental impairment. D.E. 10-1. Rigney argues that neither decision was supported by substantial evidence, arguing "the ALJ has failed to properly assess a Residual Function Capacity that is consistent with the record herein and the ALJ's Residual Function Capacity is in conflict with the Social Security Administrations regulations in this regard. Further, the ALJ's findings are not supported by the medical record as a whole." *Id.* at 13.

### A.    Evidence of Physical Limitations

First, Rigney argues that the record contains "clear proof that his complaints with his bilateral hands are severe impairments which clearly affect his ability to use his hands" and as such, the RFC should have found that Rigney can only occasionally use his hands bilaterally. *Id.*

4

at 11.  Rigney contends that ample evidence supports his conclusion, including his hearing testimony, records of four separate surgeries, continued treatment from multiple doctors for ulnar neuropathy and carpal tunnel syndrome, and the consultative examination which found Rigney suffered from Carpal Tunnel Syndrome and has pain and numbness in his hands and fingers.  *Id.* at 11.

Judicial review of the ALJ's decision is limited to a finding of substantial evidence, meaning "as long as the ALJ's findings were . . . supported by substantial evidence [the Court] may not second-guess them, even if substantial evidence would support the opposite conclusion." *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1006, (6th Cir. 2025).  Rigney's argument focuses on evidence that is allegedly contrary to the ALJ's decision.  However, regardless of opposing evidence, the ALJ did not err because his decision was still supported by substantial evidence.

In discussing Rigney's neck pain, the ALJ describes Rigney's treatment and improvement from his work-related injury in 2021 to the present.  D.E. 7 at 123-24.  Following his 2023 C5-6 fusion in March of 2023,  in particular, the ALJ stated that "[t]he record of recovery to 'preinjury' work status within a few months of the C6-7 fusion in June of 2021, as well as clinical and subjective affirmation of successful C5-6 fusion in March 2023, demonstrates the lack of any 12-month closed period of disability" that would result in Rigney being unable to perform more than sedentary work, "especially with proportionate accommodation for overhead reaching and manual manipulation to anticipate any recurrent radicular neck pain." *Id.* at 124.

Meanwhile, regarding Rigney's carpal tunnel diagnosis, the ALJ noted:

Subsequent examination of the claimant's upper extremities showed positive Tinel's signs, however they also revealed no loss of strength or sensation, and he maintained essentially full ability to perform fine and gross manipulation. Regardless, the claimant was scheduled for and underwent both median nerve decompression and carpal tunnel release of the left wrist, as well as decompression of the right over the course of 2023 and 2025.  After each of these operations, the

> claimant reported near complete resolution of his symptoms, including both pain and numbness. Tinel's signs were no longer positive, and the claimant continued to demonstrate full use of his upper extremities to perform fine and gross movements.

*Id.* (internal citations omitted).

Although the ALJ noted the large improvements in Rigney's ability to move his hands, the RFC still included enhanced limitations to reflect his continued, albeit lessened, limitations. Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Social security policy interpretation explains that sedentary work "represents a significantly restricted range of work" and is a limitation for people who have "very serious functional imitations." SSR 96-9p. Rigney's RFC includes the additional limitations, specifically addressing these manipulative restrictions, that he can frequently (rather than always) reach overhead, handle, and finger with the bilateral upper extremities. D.E. 7 at 122. The ALJ's questioning to the Vocational Expert was consistent with these restrictions. *See* D.E. 7 at 214-17.

Although he cites evidence that emphasizes the severity of his limitations, Rigney does not address the evidence cited by the ALJ in his decision. He does not explain how the ALJ failed to present substantial evidence in support of the determined RFC. Simply citing evidence in the alternative is insufficient to establish that the ALJ erred; a claimant must actually show that the ALJ failed to present substantial evidence. Because Rigney did not meet this burden, he is not entitled to relief on this ground.

### B.    Evidence of Mental Limitations

Similarly, although Rigney presents evidence from the record in support of stronger mental health limitations, he fails to establish that the ALJ's decision was not supported by substantial evidence. Rigney argues that "the ALJ failed to find any type of severe impairment from a

6

psychological standpoint" although Rigney had been diagnosed with PTSD, Adjustment Order, and Major Depressive Order.  D.E. 10-1 at 11.  Rigney continues by identifying four treatment providers that diagnosed Rigney with disorders related to trauma and anxiety.

The ALJ's decision provided a detailed analysis of Paragraph B criteria supporting his determination that Rigney's mental health conditions were not severe impairments.  D.E. 7 at 120-121.  In sum, the ALJ decided that the record did not show Rigney's mental health conditions to be severe impairments because the record was limited, included "minimal and sporadic counseling," and primarily negative treating source exams.  *Id.* at 119.  The ALJ discussed both medical treatment records and Rigney's own self-reported symptoms in determining that any impairments cause "no more than 'mild' limitation in any of the function areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities," and as such they are not severe.  *Id.* at 121.  He explained that the medical source reports show that Rigney was living an independent lifestyle, lacked deficits in interpersonal communication, was "cooperative" and "pleasant" with others, and only had a mild limitation on his ability to concentrate or maintain pace.  *Id.* at 120-121.  The ALJ also summarized Rigney's own self-reported abilities, including maintaining his personal care, attending church regularly, assisting with his children and household chores, getting along with others, driving independently, and helping to take care of his wife with scoliosis.  *Id.*

Rigney states that the ALJ "clearly did not consider [the] treating opinions in finding the Claimant did not have a severe psychiatric impairment."  D.E. 10-1 at 11-12.  He states that he received mental health diagnoses and/or treatment from the psychological consultative examiner, Sabrina Sargent with the MCHC, and H&A Counseling.  *Id.*  Although Rigney claims the ALJ failed to consider these opinions, the ALJ's decision cites records from each of these sources,

7

demonstrating they were considered in his decision making.  D.E. 7 at 120 (citing D.E. 7 at 1172 (27F)): *id.* at 125 (citing *id.* at 727 (8F), 941-945 (17F)).  While Rigney correctly asserts these records show a history of treatment and multiple diagnoses, the same records also demonstrate that Rigney's symptoms were mild and that his standard psychiatric tests had positive results, as the ALJ noted.

Rigney also points to a letter from his treating Psychiatrist, Dr. Syad Raza, which identified some of his symptoms and stated that he was "unable to work due to his mental health."  D.E. 10-1 at 12; *see also* D.E. 7 at 96.  This statement from Dr. Raza stating that Rigney could not work due to his mental condition is dated December 3, 2024, and was not submitted to the SSA until March 20, 2025.  *Id.* at 95-96.  The remaining records from Dr. Raza are all from 2025.  *Id.* at 42.  They were not provided to the SSA until July 23, 2025.  *Id.*  The ALJ's decision was issued on October 23, 2024.  *Id.* at 127.  As they were not given to the ALJ to review, the ALJ could not have erred by "not considering these treating opinions . . ."  D.E. 10-1 at 11-12.  Rigney does not argue otherwise.

Overall, the record shows that the ALJ's decision was supported by substantial evidence, including the observations of several doctors who noted at most mild limitations from Rigney's conditions and Rigney's own self-reports.  As such, Rigney is not entitled to relief on this ground.

### C.    Appeals Council's Remand

Finally, throughout his initial brief, Rigney suggests that the ALJ failed to comply with the Appeals Council's orders on remand.  D.E. 10-1 at 12.  Rigney does not explain this argument or his legal basis.  Issues raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," are deemed abandoned.  *Williamson v. Slusher*, No. 17-4271, 2018 WL 11303086, at *1 (N.D. Oh. Oct. 29, 2018) (quoting *Langley v. DaimlerChrysler Corp.*, 502 F.3d

475, 483 (6th Cir. 2000)). Without any discussion of how the ALJ ignored the Council's decision, the Court cannot adjudicate this claim. Even if Rigney fully addressed this argument, the point is still meritless. When remanding the ALJ's decision, the Council found that the DOT's descriptions of the document preparer and addresser jobs did not address whether the occupations are performed with modern tools, which could impact Rigney's ability to perform the roles. D.E. 7 at 262. The Council instructed the ALJ obtain additional VE testimony to clarify whether Rigney could perform these roles as currently practiced given his limitations. *Id.* The ALJ conducted another hearing and, while he maintained the previous RFC, he was advised of jobs other than the document preparer and addresser positions available to Rigney. *Id.* at 165. As such, the ALJ satisfactorily resolved the discrepancy in the active practice of the positions identified by the Council, and there is no error justifying remand.

### V. Conclusion

The Court being sufficiently advised, **IT IS HEREBY ORDERED THAT** the ALJ's decision is **AFFIRMED**. Plaintiff's request to remand or reverse (D.E. 10) is **DENIED**. Judgment will be entered in favor of the Commissioner by separate contemporaneous order.

This the 7th day of August, 2026.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge

9